IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

VICKI ANN PALMORE,            )
                              )
        Plaintiff,            )
                              )
v.                            )   Case No. CIV-13-244-KEW
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social        )
Security Administration,      )
                              )
        Defendant.            )

**OPINION AND ORDER**

Plaintiff Vicki Ann Palmore (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 19, 1956 and was 56 years old at the time of the ALJ's decision.  Claimant completed her high school education.  Claimant has worked in the past as an office assistant.  Claimant alleges an inability to work beginning March 1, 1999 due to limitations resulting from back pain, anxiety, depression, and neck and shoulder pain.

### Procedural History

On October 8, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On September 4, 2012, an administrative hearing was held before Administrative Law Judge ("ALJ") Doug Gabbard, II in Paris, Texas. By decision dated October 19, 2012, the ALJ denied Claimant's request for benefits. The Appeals Council denied review of the ALJ's decision on March 28, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform at all exertional levels with some non-exertional limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the opinion of Claimant's treating physician; (2) failing to perform a proper determination at steps four and five; (3) performing an improper credibility analysis; and (4) failing to

properly address Claimant's obesity.

**Consideration of the Treating Physician's Opinion**

In his decision, the ALJ found Claimant suffered from the severe impairments of affective and anxiety disorders. (Tr. 21). The ALJ determined Claimant retained the RFC to perform at all exertional levels but with the non-exertional limitations that she be limited to unskilled work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time where supervision is simple, direct, and concrete, where interpersonal contact with supervisors and co-workers is incidental to the work performed, such as assembly work, and where contact with the general public is not required. (Tr. 24).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of hand packer and janitor, which the vocational expert testified existed in sufficient numbers nationally and regionally. (Tr. 36). The ALJ, therefore, concluded Claimant was not disabled. Id.

Claimant contends the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Ronald Gleason. Dr. Gleason treated Claimant since 1998. (Tr. 372). On November 4, 2010, Dr. Gleason completed a Medical Assessment of Ability to Do Work Related Activities (Mental) statement on Claimant. He noted

5

Claimant had a "substantial loss of ability to perform . . . in regular, competitive employment and, at best could do so only n a sheltered work setting where special considerations and attentions are provided" with regard to the activities of (1) the ability to apply commonsense understanding to carry out detailed by uninvolved written or oral instructions; (2) ability to demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; (3) maintaining concentration for an extended period (2 hours); (4) maintaining attention/stay on task for an extended period (2 hours); (5) the ability to perform at a consistent pace without an unreasonable number and length of rest periods/breaks; (6) the ability to accept instructions and respond appropriately to criticism from supervisors; (7) the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (8) behaving in an emotionally stable manner; (9) the ability to respond appropriately to changes in a routine work setting; (10) the ability to cope with normal work stresses without exacerbating pathologically based symptoms; and (11) the ability to finish a normal work week without interruption from psychologically based symptoms. (Tr. 729).

Dr. Gleason estimated Claimant's GAF at 40. Claimant's symptoms leading to the cited restrictions included crying spells, anhedonia, appetite disturbance, sleep disturbance, low energy,

chronic disturbances of mood, psychomotor retardation, difficulty thinking/confusion, chronic depression, suicidal thoughts, and hallucinations/delusions. Id. Dr. Gleason would anticipate Claimant to be absent from work more than four days per month. (Tr. 730). Dr. Gleason states that Claimant has been limited to approximately the same extent since she began treatment with him. (Tr. 729).

In addressing Dr. Gleason's opinions, the ALJ initially states that he considered giving it controlling weight but declined to do so because "it is not well supported by medically acceptable clinical and diagnostic techniques and because it is inconsistent with other medical evidence of record." (Tr. 26). The ALJ dismisses Dr. Gleason's report because it was offered almost eight years after Claimant's insured status lapsed. Id. The ALJ then thoroughly discusses the deficiencies in Dr. Gleason's testing and submissions which warrants reduced weight and consideration. The noted deficiencies in the medically determinable findings track with the requirements of the regulations on mental disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00. The ALJ painstakingly documents the findings related to treatment before the expiration of Claimant's insured status and finds that Dr. Gleason did not document any disabling mental condition. (Tr. 28-30).

In deciding how much weight to give the opinion of a treating

7

physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id. (quotation omitted).  The factors reference in that section are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support

8

or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ methodically proceeded through the Watkins factors in assessing the weight which should be afforded Dr. Gleason's opinion. The ALJ's assessment that the opinion is entitled to "little weight" is supported by the ALJ's analysis and the medical record as a whole. (Tr. 32).

**Steps Four and Five Analysis**

In his decision, the ALJ found Claimant had "moderate restriction" in her activities of daily living, noting she was able to drive and perform household chores and occasionally dined out with her husband. He also found Claimant was moderately restricted in concentration, persistence, or pace. (Tr. 24). Claimant

9

contends the ALJ failed to include these restrictions in either his RFC or hypothetical questioning of the vocational expert.

While the ALJ must consider both severe and non-severe limitations in reaching his RFC determination, the fact he found limitations in the B criteria "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." Beasley v. Colvin, 2013 WL 1443761, 5 (10th Cir.). Since the hypothetical questioning of the vocational expert must mirror the ALJ's RFC and the ALJ did not find the these limitations as functional limitations and include them in his RFC, this Court cannot find that the hypothetical questioning was erroneous with regard to the paragraph "B" criteria. The ALJ acknowledges this legal limitation in his decision. (Tr. 24).

**Credibility Determination**

The ALJ concluded that Claimant received little in the way of actual medical treatment for her physical maladies during the relevant time period. (Tr. 33). He found Claimant's statements were not supported by the medical record. Id. Again, the ALJ engaged in an extensive recitation of the medical record and the conflicts with Claimant's testimony. (Tr. 33-35).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not

just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the

ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ's analysis of Claimant's testimony and the lack of support for the level of limitation to which she testified in the record is supported by substantial evidence. No error is attributed to this analysis.

### Consideration of Claimant's Obesity

Claimant speculates that "Claimant's obesity would surely compound the pain from her back necessitating proper consideration of obesity at steps 4 and 5." An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments).

At step three, "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Soc. Sec. R. 02-1p. "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and

cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id. However, speculation upon the effect of obesity is discouraged.[2] *See*, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.).

The ALJ stated in his decision that he considered the combined effects of obesity upon other impairments under the requirements of Soc. Sec. R. 02-1p. The ALJ expressly stated that the condition existed for many years and likely was a progenitor of her high blood pressure. (Tr. 34). This Court is required to take the ALJ at his word that he considered the condition without speculating as to its effects. Indeed, the medical record does not indicate and Claimant has not directed this Court to the presence of any functional limitations which would stem from Claimant's obesity. Again, the diagnosis of the condition does not automatically translate into functional limitations. The ALJ did not err in his consideration of Claimant's obesity.

**Conclusion**

The decision of the Commissioner is supported by substantial

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

13

evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of September, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE